UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATESHA TOWNS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WEST CREEK FINANCIAL, INC., doing business as KOALAFI; MATTRESS AND FURNITURE EXPRESS; and DOES 1–5,<br><br>Defendants. | No. 2:22-cv-01757-DJC-AC<br><br>ORDER DENYING MOTION TO REMAND AND MOTION TO COMPEL ARBITRATION |

Plaintiff LaTesha Towns brings a putative class action against Defendants West Creek Financial, Inc., doing business as Koalafi ("Koalafi") and Mattress and Furniture Express ("Mattress Express") for violations of various California consumer laws related to a "rent-to-own" transaction with Mattress Express financed by Koalafi. Koalafi moves to compel arbitration of Towns's individual claims and to stay or dismiss the representative or class action claims. Plaintiff counters by moving to remand the case back to state court following removal under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d). For the reasons set forth below, the Court DENIES Plaintiff's Motion to Remand (ECF No. 12) because Koalafi adequately alleges an

amount-in-controversy exceeding $5 million.  The Court also DENIES Koalafi's Motion to Compel Arbitration (ECF No. 4) because Plaintiff did not assent to a lease with Koalafi and therefore could not have agreed to arbitrate with Koalafi.

## BACKGROUND

### I. Factual Background

Plaintiff LaTesha Towns purchased a piece of furniture from Mattress Express on March 3, 2023 for a "discounted" price of $2,600.00. (*See* Class Action Compl. and Demand for Jury Trial (ECF No. 1-1) ¶¶ 12–13 ("Complaint" or "Compl.").)  According to Plaintiff, she ultimately agreed to give a down payment of $1,995.43 and to finance the remaining balance of $605 with Mattress Express. (*See id.* ¶¶ 15–16.)  Mattress Express prepared the paperwork for the transaction, but "unbeknownst to Plaintiff, Mattress Express and Koalafi provided a Rental-Purchase Agreement (the 'Agreement')." (*Id.* ¶ 17; *see also* Decl. of Njeri Kershaw Ex. 1 (ECF No. 4-1 at 6–7) ("the Agreement" or "Kershaw Decl. Ex. 1") (providing a copy of the email that contained the 3/3/2022 rental-purchase agreement that contained the arbitration clause).)  According to the Agreement, the piece of furniture Plaintiff purchased had a total cash price of $1,000, but because Plaintiff did not pay the cash price, Plaintiff had to make biweekly rental payments totaling $1,316.63 that then gave Plaintiff the option to make additional biweekly payments that would ultimately require Plaintiff to pay $2,316.63 to own the piece of furniture. (*See* Kershaw Decl. Ex. 1.)  In short, Plaintiff had to pay more than $2,000 on a piece of furniture allegedly only worth $1,000 despite making a down payment of $1,995.43. (*See* Compl. ¶ 19; Pl.'s Opp'n to Koalafi's Mot. to Compel Arbitration and Stay the Proceedings (ECF No. 13) at 1 ("Arbitration Opposition or Arb. Opp'n").)

Although Plaintiff alleges that she did not get a chance to review the Agreement before signing it (*see, e.g.*, Compl. ¶ 18), Plaintiff did receive an email with the entire agreement that she accessed a few days later (*see* Decl. of LaTesha Towns in Supp. of Arb. Opp'n (ECF No. 13-1) ¶ 10 ("Towns Decl.")).  The Agreement required

2

26 biweekly payments beginning March 3, 2022, the day the Agreement was signed. (*See* Kershaw Decl. Ex. 1.)  Beginning in April 2022, Koalafi began reporting Plaintiff's rental-purchase account as past due.  (*See* Compl. ¶ 21.)

## II.  Procedural Background

Plaintiff filed the Complaint on August 24, 2022.  (*See* Pl.'s Not. of Mot. and Mot. to Remand Action (ECF No. 12) at 5[1] ("Remand Motion or Remand Mot.").)  Koalafi removed the matter to federal court on October 5, 2022.  (*See id.*)  On October 12th, Koalafi moved to compel arbitration of Plaintiff's individual claims and stay or dismiss the class action or representative claims.  (*See* Koalafi's Not. of Mot. and Mot. to Compel Arbitration of Pl.'s Individual Claims and Stay the Proceedings; Supp. Mem. of P. and A. (ECF No. 4) ("Arbitration Motion" or "Arb. Mot.").)  Plaintiff then moved to remand the case when she filed her Opposition.  (*See* Remand Mot.; Arb. Opp'n.)  The Court took the matter under submission without oral argument, and the matter is now fully briefed.  (*See* ECF No. 19.)

**DISCUSSION**

Motions to remand questioning the alleged amount-in-controversy "inherently [raise] an issue of subject matter jurisdiction."  *Avila v. Con-Way Freight Inc.*, 588 F. App'x 560, 561 (9th Cir. 2014) (mem.) (non-precedential); *see Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (quoting *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010)) (criticizing the district court for improperly deciding the merits of the case before determining whether it had subject matter jurisdiction).  Accordingly, the Court must decide the Remand Motion before it can decide the Arbitration Motion because establishing federal subject matter jurisdiction would oust state court jurisdiction as opposed to simply compelling arbitration, in which case state court litigation may proceed in parallel.  *See Geographic Expeditions, Inc.*, 599 F.3d at 1107.

---

[1] Because Plaintiff's Remand Motion is mispaginated by re-using page number two, the Court refers to the ECF or Bates stamp page number.

### I. Motion to Remand

#### A. Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant, or the defendants, to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, the federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least one hundred members, and the aggregated amount-in-controversy exceeds $5 million dollars. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5).

A defendant removing a class action filed in state court pursuant to CAFA need only plausibly allege in the notice of removal that the CAFA prerequisites are satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). If the plaintiff seeks to remand that action back to state court, however, the defendant bears the evidentiary burden of establishing federal jurisdiction under CAFA by a preponderance of the evidence. *See id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)); *also Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Smith v. Mylan Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997). The Supreme Court has advised, however, "that no antiremoval presumption attends cases invoking CAFA" in part because the statute was enacted "to facilitate adjudication of certain class actions in federal court," and that "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89 (citations and quotations marks omitted); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

////

When a plaintiff's complaint does not quantify damages, as here, defendants must show by a preponderance of the evidence that the amount-in-controversy exceeds the jurisdictional threshold. *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020). A defendant is only required to show that it is more likely than not that the plaintiff's maximum recovery could reasonably be over $5 million. *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1185 (E.D. Cal. 2020). This burden is not daunting as "a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (citation omitted). Rather, in making this showing, a removing defendant "must be able to rely 'on a chain of reasoning that includes assumptions . . . .'" *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)); *see also id.* ("[A] CAFA defendant's amount in controversy assumptions in support of removal will always be just that: *assumptions*."). These assumptions must reflect more than "mere speculation and conjecture," *Ibarra*, 775 F.3d at 1197, and they "need some reasonable ground underlying them," *id.* at 1199, but they "need not be proven," *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions may be reasonable if they are "founded on the allegations of the complaint." *Arias*, 936 F.3d at 925. Parties may also submit evidence outside the complaint, including affidavits, declarations, or other summary-judgment type evidence. *Ibarra*, 775 F.3d at 1197.

The plaintiff can contest the amount-in-controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (citations and quotations omitted). A factual attack, on the other hand, contests the truth of the allegations themselves. *Id.* When a plaintiff mounts a factual attack, they "need only challenge the truth of the defendant's

jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700.

**B.     Analysis**

Plaintiff contends that the proposed class size is smaller than the 5,000 members Koalafi used to base its calculations.  (*See* Pl.'s Reply in Supp. of Remand Mot. (ECF No. 20) at 2 ("Remand Reply").)  However, the Complaint indicated that "Koalafi opened hundreds or even thousands of rental purchase agreements in California during the applicable statute of limitations period . . . ."  (Compl. ¶ 25.)  Plaintiff's proposed classes defined members to include people in California who have or had a:

1.   "Rental-Purchase Agreement with Koalafi during the relevant statute of limitations periods[ ]" in the Defective Disclosure Class;
2.   "Rental-Purchase Agreement with Koalafi and paid a down payment, during the relevant statute of limitations period[ ]" in the Down Payment Class; and
3.   "Rental-Purchase Agreement with Koalafi and were reported by Koalafi as past due, in default, or in repossession, during the relevant statute of limitations period[ ]" in the Credit Reporting Class.  (*Id.* ¶ 22.)

Koalafi reviewed its records to find that "Koalafi entered Rental-Purchase Agreements with more than 5,000 individuals with addresses in California."  (Decl. of Njeri Kershaw in Supp. of Remand Opp'n (ECF No. 17-1) ¶ 5 ("Kershaw Decl.").)  Here, the Defective Disclosure Class will contain those 5,000 individuals; the Down Payment Class likely will contain nearly 5,000 members; and the Credit Reporting Class will likely contain less members than the Down Payment Class.  Therefore, the assumption of 5,000 members seems reasonable, depending on the particular class being analyzed.

Having found that 5,000 members is a reasonable assumption depending on the proposed class, there remains to be found whether Koalafi can establish the $5 million amount-in-controversy based on the potential violations alleged in the

Complaint. Koalafi can. As Koalafi notes, the Complaint alleges in the first cause of action eight different violations of California's Rental-Purchase Act, codified at California Civil Code section 1812.620, *et seq.*, each violation authorizing $1,000 in statutory damages. (*See* Koalafi's Opp'n to Remand Mot. (ECF No. 17) at 3 ("Remand Opposition" or "Remand Opp'n").) The first cause of action applies to the Defective Disclosure Class that contains 5,000 individuals. The California Rental-Purchase Act provides essentially strict liability for a defendant's failure to provide certain information or for various unlawful practices arising from a rental-purchase agreement. (*See* Compl. ¶ 32.) Even assuming Plaintiff succeeds on just proving one out of eight violations for each of the 5,000 members, that would satisfy the amount-in-controversy by itself. (*See* Remand Opp'n at 6.)

Assuming Plaintiff only succeeds on a portion of her claims under the California Rental-Purchase Act, Plaintiff also seeks $5,000 in statutory damages for each individual violation of the California Consumer Credit Reporting Agencies Act, codified at California Civil Code section 1785.25(a). (*See* Compl. ¶¶ 36–44.) That class size is likely less than 5,000 members, but, as stated in the Complaint, "[e]very month that Koalafi continues to inaccurately report a past due payment is a separate and distinct action of furnishing credit reporting information, and is therefore a separate and distinct violation of California Civil Code § 1785.25(a)." (*Id*. ¶ 41.) The Complaint was filed in August of 2022. Assuming only violations since the filing of the Complaint, there are twelve months so twelve distinct violations for each potential class member. At $5,000 for each violation for twelve months, there need only be over 84 members that suffered a loss to satisfy the entire $5 million amount-in-controversy. Finding only 84 affected members out of 5,000 potential members would equate to a 1.68% violation rate, an arguably *de minimis* amount, and therefore a reasonable assumption.

////

### C. Conclusion

Because all of Plaintiff's proposed classes include members who had a Rental-Purchase Agreement with Koalafi, Koalafi's assumption that there were 5,000 potential class members based on a review of its records is reasonable. Even assuming that the putative classes succeed on a portion of or even a *de minimis* amount of the claims, damages will exceed $5 million. That is more than enough at this stage to find that the amount-in-controversy has been met because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias*, 936 F.3d at 927 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). Accordingly, Plaintiff's Motion to Remand (ECF No. 12) is DENIED.

## II. Motion to Compel Arbitration

### A. Standard

The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. § 2. The FAA affords parties the right to obtain an order directing that arbitration proceed in the manner provided for in the agreement. 9 U.S.C. § 4. To decide on a motion to compel arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). However, parties may use general contract defenses to invalidate an agreement to arbitrate. *See id.* at 339. Thus, a court should order arbitration of a dispute only where satisfied neither the agreement's formation nor enforceability or applicability to the dispute is at issue. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). "Where a party contests either or both matters, 'the court' must resolve the disagreement," *id.* at 299–300 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)), because "a party cannot be required to submit to arbitration any

dispute it has not agreed so to submit." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)) (alteration omitted).  If a valid arbitration agreement encompassing the dispute exists, arbitration is mandatory.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Under § 3 of the FAA, a court, "upon being satisfied that the issue involved . . . is referable to arbitration, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate.  *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).  In resolving a motion to compel arbitration, "[t]he summary judgment standard [of Federal Rule of Civil Procedure 56] is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'"  *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).  Under this standard of review, "[t]he party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration."  *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-CV-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (citations omitted)).  "A material fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Conversely, "where the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.    Analysis**

Plaintiff does not contest that the Agreement includes a provision requiring arbitration of gateway issues. The Agreement states in one section towards the bottom that "[t]he arbitrator shall decide any and all issues relevant to the Claim, including all issues of Arbitrability." (Kershaw Decl. Ex. 1.) The Agreement defines "Arbitrability" in a separate section towards the top of the Agreement to "mean[ ] all issues, without limitation, relating to the making, validity, revocation of the agreement to arbitrate, whether a particular claim or dispute is arbitrable, the scope of the Arbitration Provision, and any issue with respect to the validity of jury trial, class action or representative action waivers." (*Id.*)

Instead, Plaintiff contends that the Agreement is not enforceable: (1) because she did not assent to the terms; and (2) because the clause delegating gateway issues is unconscionable. (*See* Arb. Opp'n at 4–9.) Koalafi counters by arguing that mutual assent exists because of a 30-day opt-out provision that Plaintiff failed to exercise, and that this same provision prevents any finding of unconscionability because there would be no procedural unconscionability. (*See* Koalafi's Reply to Pl.'s Arb. Opp'n (ECF No. 18) at 1 ("Arbitration Reply" or "Arb. Reply"); *see generally id.* (first quoting *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002); then quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014); and then quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016)).) As the Court concludes Plaintiff did not assent to the terms of the Agreement, it need not reach the arguments regarding unconscionability.

The Supreme Court has repeatedly proclaimed that "'the first principle that underscores all of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'" *Lamps Plus, Inc. v. Varela*, 587 U.S. ----, 139 S. Ct. 1407, 1415 (2019) (quoting *Granite Rock Co.*, 561 U.S. at 299 (quoting *Volt Info. Scis., Inc. v. Bd. of*

*Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989))) (first alteration omitted). Although consent is required for every contract, the "'principle of knowing consent applies with particular force to provisions for arbitration[,]' including arbitration provisions contained in contracts purportedly formed over the internet[.]" *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 460 (2021) (first quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972); and then citing *Long v. Providence Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016)), *reh'g denied* (Jan. 18, 2022), *review denied* (Apr. 13, 2022).

   Here, Plaintiff averred that she agreed to and believed that she entered into a financing agreement or loan provided by Mattress Express. (*See* Towns Decl. ¶ 3.) She indicated that she only engaged with a Mattress Express representative in a Mattress Express location where the representative executed the procedures for creating an agreement on a screen that Plaintiff could not see. (*See id.* ¶¶ 4–8.) Plaintiff never saw the Agreement or any related terms before she acknowledged the Agreement "on a small stand-alone digital signature pad and [was] advised that [she] would receive a completed copy of the Agreement via email." (*Id.* ¶ 8.) Koalafi does not dispute this fact, and, indeed, likely cannot dispute this fact because Mattress Express – not Koalafi and not its Senior Operations Manager Njeri Kershaw – was present and made the sale and thus had personal knowledge of it. Instead, Koalafi tries to argue that it is enough that the Agreement was sent via email to Plaintiff before and after she acknowledged it. (*See* Arb. Reply at 2–3.) Koalafi's emails, however, are insufficient to "establish [that] the contractual terms were presented to the consumer in a manner that made it apparent [that] the consumer was assenting to those very terms when checking a box or clicking on a button." *Sellers*, 73 Cal. App. 5th at 461 (citing *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)).

   First, the fact that Koalafi sent Plaintiff an email with the Agreement before she signed it is irrelevant in light of the fact that no one told her that any such email had been sent. *See Knutson*, 771. F.3d at 565 ("[A]n offeree, regardless of apparent

11

manifestation of h[er] consent, is not bound by inconspicuous contractual provisions of which [s]he was unaware, contained in a document whose contractual nature is not obvious." (quoting *Windsor Mills, Inc.*, 25 Cal. App. 3d at 991) (second and third alterations added)). While Koalafi argues that Plaintiff "does not dispute receiving the Rental-Purchase Agreement via email *before* she signed it" (Arb. Reply at 2), Plaintiff states in her declaration that Mattress Express "did not . . . advise that a copy had been emailed to me for review," (Towns Decl. ¶ 8,) and Plaintiff has provided evidence that she did not have any actual knowledge of the Agreement at the time she signed it. (*See* Towns Decl. ¶ 4 ("The [Mattress Express] representative never showed me or offered to show me the monitor, or described the contents of the information on the monitor, including any financial terms or arbitration provision."); *id.* ¶ 8 ("Mattress Express did not show me the Agreement or any related terms before I signed it. It did not provide a copy of the Agreement, [or] show a copy on the monitor . . . ."); *id.* ¶ 10 (explaining that she "did not open any email from Koalafi and was not told than an email was sent to [her] containing the Agreement before [she] had signed it on the digital pad[,]" and that she "did not have access to [her email account] on [her] mobile phone because [she] had not downloaded the gmail application to [her] mobile phone, [and] therefore [ ] could not have opened any email from Koalafi.").). Given these facts, the Court cannot find that the email containing the Agreement would have put a "reasonably prudent" consumer on "inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177 (citations omitted); *e.g.*, *Sadlock v. Walt Disney Co.*, --- F. Supp. 3d. ----, No. 22-CV-09155-EMC, 2023 WL 4869245, at *7–13 (N.D. Cal. July 31, 2023). Here, it is unreasonable to assume that Plaintiff would check her email for a copy of an agreement in the middle of a purchase unless she was told to expect it. (*Contrast with* Towns Decl. ¶¶ 8, 10.) And in any event, she has provided evidence that she did not have a means to access her email. (*Id*. ¶ 10.)

Second, the fact that Plaintiff continued to "lease" the couch is insufficient to show she assented to it. Koalafi essentially argues that Plaintiff assented to the

12

Agreement because she did not contest her account being automatically charged. (*See* Compl. ¶ 21; Kershaw Decl. Ex. 1.) But the Ninth Circuit has rejected the contention that automatically charging a person's debit or credit card manifests that person's assent, explaining that such a method "was 'too passive for any reasonable factfinder to conclude that [the consumer] manifested a subjective understanding of the existence of the arbitration and other emailed provisions and an intent to be bound by them in exchange for the continued benefits [the business] offered." *Knutson*, 771 F.3d at 569 (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 128-29 (2d Cir. 2012)).

Moreover, the fact that Koalafi sent Plaintiff a subsequent email with a copy of the Agreement is insufficient to show assent. Given that Plaintiff purchased the couch from Mattress Express and was not put on notice that Koalafi would be providing the financing, there is no reason Plaintiff or any objectively reasonable consumer would expect an email from Koalafi to contain a contract with Koalafi, let alone an email from Koalafi that actually contains an arbitration agreement. *See Knutson*, 771 F.3d at 566–69; *Schnabel*, 697 F.3d at 126 ("But that someone has received an email does not without more establish that he or she should know that the terms disclosed in the email relate to a service in which he or she had previously enrolled and that a failure affirmatively to opt out of the service amounts to assent to those terms."). That is particularly true here where the Agreement was a "lease" or "rental-purchase" agreement totaling over $2,000 instead of a $600 financing or loan agreement that Plaintiff would have expected given her conversation with the Mattress Express representative. (*See* Towns Decl. ¶ 5.) Koalafi tries to assert that Plaintiff "downloaded the Rental-Purchase Agreement—even if several days after the transaction[ ]" (Arb. Reply at 3), but Plaintiff only declared that she downloaded the Gmail application to her phone several days after the transaction (Towns Decl. ¶ 10). Plaintiff never stated that she saw the Agreement, and Koalafi has not claimed or brought forth evidence indicating that Plaintiff *did* download and view the Agreement.

13

Ultimately, this case is indistinguishable from *Knutson*. There, the plaintiff in *Knutson* purchased a Toyota vehicle at the dealership that included an additional service provided by Sirius XM Radio Inc. in the form of a 90-day trial of Sirius XM Radio. *See Knutson*, 771 F.3d at 562. At the time the plaintiff purchased the vehicle from the Toyota dealership, the plaintiff was not presented any documents by Sirius XM Radio Inc. and "believed that Sirius XM's trial subscription was a complimentary service 'provided for marketing purposes.'" *Id.* at 566. One month into the 90-day trial period, Sirius XM Radio Inc. mailed copy of the Customer Agreement containing an arbitration clause and another clause that permitted the plaintiff to opt-out of the Customer Agreement within 3 business days of activation to avoid being legally bound by it. *See id.* at 562. The plaintiff "did not read the Customer Agreement when it arrived in the mail because he did not think 'that any of the documents contained therein were a contract governing the terms of Sirius' service.'" *Id.* at 563. Furthermore, Sirius XM Radio Inc. failed to have Toyota disclose in the Toyota Purchase Agreement that it had a relationship with Sirius XM Radio Inc. to provide Toyota customers with a trial service and that the Toyota customer was therefore entering into a contractual relationship with Sirius XM Radio Inc. *See id.* at 567. And Sirius XM Radio Inc. failed to ask Toyota to provide its customers with literature that explained Toyota's agreement with Sirius XM Radio Inc. and that asked the Toyota customer for assent to the agreement. *See id.*

Koalafi tries to distinguish *Knutson* by pointing to the 30-day opt-out window as opposed to the 3-day opt-out window in *Knutson*. However, the Ninth Circuit never addressed the opt-out provision outside of the factual and procedural background sections, *see Knutson*, 771 F.3d at 562–64, and the logic of the Ninth Circuit's reasoning is broader than Koalafi contends, *see, e.g.*, *id.* at 565 ("Accordingly, we consider . . . whether failure to cancel the trial subscription to Sirius XM after he received the Customer Agreement constituted an objective manifestation of his assent to the arbitration provision."). Moreover, arbitration is a matter of knowing consent,

and whether the opt-out window was 3 days, 30 days, or 300 days, does not change the fact that Plaintiff "could not assent to [Koalafi's] arbitration provision because [s]he did not know that [s]he was entering into a contract with [Koalafi]." *Id.* at 569.

### C. Conclusion

For these reasons, the Court concludes that Koalafi has failed to meet its burden of showing that a binding agreement to arbitrate exists in this case. Because the Court finds that the arbitration agreement is unenforceable for lack of mutual assent, the Court does not decide whether the arbitration provision in the Agreement is unconscionable. *See Knutson*, 771 F.3d at 569. Accordingly, Koalafi's Motion to Compel Arbitration (ECF No. 4) is DENIED.

## ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Remand (ECF No. 12) and DENIES Koalafi's Motion to Compel Arbitration (ECF No. 4). Koalafi has 14 days from the docketing of this Order to file its responsive pleadings.

IT IS SO ORDERED.

Dated:  **November 9, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – towns.22cv1757.MTR.MTCA